UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KELLY QUEZADA,

    Plaintiff,

v.

LINCOLN LIFE ASSURANCE COMPANY OF BOSTON, et al.,

    Defendants.

No. C 20–07515 WHA

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR RECONSIDERATION**

**INTRODUCTION**

In this ERISA action for disability benefits, defendants insurance plan administrator and affiliated claim administrator move for summary judgment. The motion for summary judgment is **DENIED** and the case is **REMANDED FOR RECONSIDERATION**.

**STATEMENT**

In essence, our facts are simple. Plaintiff Kelly Quezada left his employment due to back pain. He sought and received disability benefits for several years before being denied. The appeal of the denial failed. Quezada now brings this ERISA claim to reinstate his benefits. The details follow.

**1.     THE PLAN.**

Genentech provided disability benefits to its employees through defendant insurance plan administrator, U.S. Roche Health and Welfare Benefits VEBA Plan ("Roche"). Here, only the long-term benefits plan is at issue.

Roche retained discretionary authority to administer the plan, interpret it, and delegate duties under the plan (ROCHE02728–2729) (emphasis added):

> The Plan Administrator has full discretion to interpret and administer the Plan and each Component Plan [including the plan for disability benefits]. All actions, interpretations and decisions of the Plan Administrator . . . shall be given the maximum deference allowed by law. . . . the Plan Administrator will have all powers necessary or convenient to supervise, in its discretion, the administration of the Plan . . . including . . . the following discretionary powers:
>
>     (a) The exclusive right to construe and interpret the provisions of the Plan and to determine any question arising under, or in connection with the administration or operation of, the Plan
>
>         \*                  \*                \*
>
>     (n) To interpret the Plan in its sole discretion, its interpretation thereof in good faith to be final and conclusive on the Company, Employees, Participants, and all persons claiming Benefits under the Plan;
>
>     (o) to allocate and *delegate its responsibilities under the Plan and to designate other persons to carry out any of its responsibilities under the Plan* . . . .

Under this section, the plan administrator contracted out its claim administration to defendant Lincoln Life Assurance Company of Boston ("Lincoln"). (Liberty Life Assurance Company of Boston conducted Roche's claim administration before being acquired by Lincoln in 2019, but this order consistently refers to the claim administrator as Lincoln.) Under "Review and Determination of Your Claim," the plan document stated:

> If your claim is submitted in a timely manner . . . , it will be reviewed by the Claims Administrator who will determine if you are Disabled or Partially Disabled based on information supplied by your attending Doctor and by a physician or nurse case manager selected by the Claims Administrator.

Eligibility for long-term disability benefits under the plan required beneficiaries to meet Lincoln's definition of disability. Different from the conventional notion of "disability," the plan's definition of disability focused on the ability to work. After 24 months of long-term disability coverage, a beneficiary had to meet the following definition to continue to qualify (ROCHE02766):

> After 24 months of receiving LTD [long-term disability] benefits, however, [the beneficiary] will be considered "Disabled" only if [he or she is] unable to perform the duties of any Gainful Occupation for which [he or she is] reasonably fitted by education, training or experience due to that same Sickness or Injury.

"Gainful Occupation" meant "an occupation, including self-employment, that is or can be expected to provide you with an income equal to at least 80% of your Indexed Monthly Earnings within 12 months of your return to work." Under "Duration of LTD Benefits" the plan explained that after 24 months of long-term disability coverage a beneficiary would lose eligibility if they could work in any Gainful Occupation that he or she was "reasonably fitted by training, education, experience, age, physical and mental capacity" (ROCHE02766).

Lincoln's plan reserved the right to periodically review claims and to deny benefits if the beneficiary failed to provide up-to-date proof of eligibility (ROCHE02769–70, 97). A provision under "How You Could Lose LTD Benefits" explained that Lincoln would stop paying long-term disability benefits if a beneficiary did "not timely furnish proof of [their] Disability . . . , or of [their] continued Disability . . . , or do not satisfy any other LTD Plan requirement such as receiving Regular Care" (ROCHE02777).

> Proof of disability included the following (ROCHE02770):
>
> The date Disability or Partial Disability began;
>
> The cause of Disability or Partial Disability;
>
> Appropriate documentation of Disability or Partial Disability, including the extent of the Disability or Partial Disability, as well as
>
> (a) in the case of a Disability, the restrictions and/or limitations preventing [the beneficiary] from performing . . . Any Occupation (after 24 months of disability)

3

The plan acknowledged the claim administrator's duties under ERISA upon the denial of benefits: notifying beneficiary of the reason for a denial; naming the plan provisions relied upon for a denial; describing the basis for disagreeing with the findings of a healthcare provider or vocational expert, if applicable; specifying the appeals process for a denial; and affirming the right to bring an ERISA action to challenge a denial (ROCHE02779).

### 2. QUEZADA'S CLAIM FOR LONG-TERM DISABILITY.

Plaintiff Kelly Quezada started working for Genentech (a member of U.S. Roche Group) on March 20, 2006. He worked there through 2015, when he held the position of Senior Pharma Materials Specialist. This entailed heavy lifting, prolonged standing, material inventory, labeling, computer work, and forklift operation in Genentech's warehouse.

On January 18, 2015, Quezada took a leave of absence from work due to chronic back pain. Quezada submitted his first request for short-term disability benefits on January 19, 2015, under his employer's self-funded disability benefits plan. Quezada's plan approved his request and he started receiving short-term disability benefits.

Quezada had a doctor's appointment with Dr. Maziar Shirazi January 21, 2015, in which he reported an exacerbation of his low back and hip pain that caused him to miss a week of work. On January 27, 2015, Quezada had a first-time consultation with a pain specialist, who noted that Quezada had "degenerative changes of spine and discs and low back pains" and recorded Quezada's report of pain (ROCHE02095):

> Describes a dull aching pressure pain that "just sits" in his low back midline. Range 2-10/10. Gets flares of pain 2-3 x/yr. The est of the time pain levels are lower 2-6/10 but still interfere with sports participation or doing things with his kids, partly due to the pain and partly a fear of an aggravation. Started suddenly with first pain flare 14 yrs ago and back issues since then. Better with lay down and cold and worse with back bends, lifting, and certain motions. Does some stretching. "works out" at gym daily. Rarely pains in legs but often gets numbness in left leg when prolonged sitting.

To control his pain, Quezada reported seeing a chiropractor regularly, using cannabis occasionally, and taking Norco (an opioid painkiller) up to four times daily. A February 2015 MRI of Quezada's back revealed "spinal stenosis of the lumbar spine [without] neurogenic

claudication [compression of the spinal nerves]" (ROCHE02104). Quezada then saw a spine specialist who confirmed degenerative disc disease but did not recommend surgery or injections for pain. Quezada received instructions to start acupuncture and physical therapy.

In March 2015, Genentech gave Quezada a new work assignment that involved mainly desk work. But even a desk job caused Quezada too much pain. Notes from a May 2015 phone check-in with Quezada stated (ROCHE00049):

> Normal job description cannot do. Does not even know if can work in office. No other tasks are available. Pain is chronic. . . . using cane all of the time for last few weeks. Walking with a cane still getting random back spasms . . . any kind of wrong movement is tough . . . .

Quezada continued receiving short-term disability benefits for the maximum 26-week period through July 19, 2015.

After his short-term disability ran out, Quezada applied for and received long-term disability from August 2015 through early 2020. During this time period, Quezada kept seeking treating for his back pain (painkillers, physical therapy, injections, acupuncture) and regularly submitted records to Lincoln to evidence his continued eligibility for disability benefits.

On February 14, 2019, Lincoln requested that Quezada complete additional forms and warned him that failure to provide information needed for a claim investigation could lead to denial of his benefits (ROCHE00722–23). The form packet contained questionaries about Quezada's abilities, training, education, and experience, which he completed and returned to Lincoln.

On September 9, 2019, Lincoln notified Quezada that his eligibility was being evaluated and that, in order to continue receiving benefits, Quezada had to submit to an in-person medical examination by a rehabilitation physician. The medical examination sought to determine what physical limitations, if any, prevented Quezada from working (ROCHE00511).

On January 18, 2020, Lincoln issued a denial of Quezada's benefits after a reevaluation of his eligibility. Lincoln informed Quezada that his benefits warranted termination because "there [was] no support for impairment that would result in restrictions and limitations and the

inability to perform any occupation beyond January 31, 2020" (ROCHE00470). According to the denial letter, the review of his claim file considered a laundry list of medical documentation, including office visit notes, work status reports, physical therapy notes, x-ray and MRI results, among others. The denial also relied on reports from three Lincoln-selected evaluators: an in-person medical evaluation, a physician-conducted record review (by a different doctor), and a vocational specialist's analysis of Quezada's capacity to work (ROCHE00468).

The physician who conducted the record review acknowledged Quezada's complaint of pain but noted a lack of documentation of any description of the severity of symptoms. He also observed that Quezada's records showed ongoing use of opioids and cannabis despite a lack of evidence that his symptoms were improving. The reviewing physician recommended limited restrictions on strenuous physical movements like lifting, but did not recommend restrictions on standing, walking, or sitting (as long as Quezada could change positions for comfort).

The in-person medical evaluation concluded that Quezada suffered from chronic pain and found moderate limitations appropriate, but allowed sitting, light lifting, pushing, and pulling (ROCHE00502–03):

> The claimant's lumbar spine condition and source of symptoms appears consistent with a chronic condition involving the lumbar intervertebral discs. . . . With this in mind claimant would benefit from medical restrictions to decrease the likelihood of making his condition or symptoms worse. The following restrictions are recommended given the claimant's lumbar spine condition:
>
> Sitting: continuous capacity for sitting with position changes as needed for comfort.
>
> Lift/carry/push/pull: up to 25 pounds frequently, up to 50 pounds occasionally.
>
> Crouch/crawl/bend/twist (waist level): occasionally.
>
> There are no other restrictions and/or limitations identified.

The vocational specialist who reviewed Quezada's transferable skills concluded that he could serve as a material coordinator or a laboratory supervisor based on his physical restrictions and qualifications (ROCHE00470).

After referencing these findings, the letter dated January 18, 2020, provided:

> Conclusively, we have determined that the medical evidence does not support impairment. You do not meet your Policy's definition of disability for any occupation, and we have closed your claim. Payments will be issued through January 31, 2020.
>
> Based on our review of the information contained in your claim file we have determined that you can perform, with reasonable continuity, the material and substantial duties of the above occupation(s) [material coordinator or laboratory supervisor] based on your capacity and skill level.
>
> Therefore, you do not meet [the plan's] definition of disability beyond January 31, 2020 and we must deny your claim for further benefit consideration.

Finding that Quezada no longer qualified, Lincoln advised him of his right to appeal and suggested that he submit supplemental information (ROCHE00471–72):

> All medical documentation, office treatment notes, diagnostic test results (including x-ray reports and MRI reports, as well as any additional testing completed), chiropractic office treatment notes, acupuncture office treatment notes, physical and/or occupational therapy notes, prescription histories, Emergency Department and hospitalization summaries, specific restrictions and limitations, and detailed treatment plan dated August 15, 2017 to the present that have not previously been received from all treating providers.

In July 2020, Quezada appealed the denial. The next month, he submitted supplemental materials in support of his appeal — his own statement, additional medical records, a record from his treating physician, Dr. Hector Guzman, dated August 4, 2020, and a report by an independently-hired vocational expert, C. Kimball Heartsill. The August 2020 record showed Dr. Guzman's conclusions that "per patient's level of pain, [he] needs to lie down 30 minutes out of every hour" and that Quezada could "work no more than 4 hours" (among many other restrictions) (ROCHE00445). Beside a list of restrictions, Dr. Guzman's record provided no other details (ROCHE00445). Heartsill reviewed Dr. Guzman's August 2020 evaluation of Quezada, spoke to Quezada on the phone, and concluded in her report (ROCHE00441):

> The physical limitations as imposed by the treating physician Dr. Guzman . . . would exceed the usual and customary allowances for off task behavior for any reason which would be allowed in competitive employment found in the regional and national economies.

7

Heartsill also stated that Quezada's qualifications did not meet the requirements of the alternative occupations suggested in the denial letter (ROCHE00439).

Quezada's statement outlined his attempts to address his pain with medication and injections but explained that he still experienced severe pain that required daily medication (ROCHE00451). The pain medications, in turn, caused fatigue and decreased Quezada's mental clarity. Quezada's statement also took issue with the in-person medical evaluation, alleging that the physical exam only lasted five minutes and that "the doctor refused to look at the medical records stating [Quezada] could have tampered with them" (ROCHE00451). Quezada also claimed that he stood with the assistance of a cane and had to lean against the wall for the entire evaluation, yet the physician still concluded he could sit continuously (ROCHE00452).

After reviewing Quezada's supplemental materials, Lincoln upheld its denial in a letter dated September 29, 2020 (ROCHE00407). The appeal letter relied on the in-person medical evaluation's conclusion that Quezada only needed limited restrictions and virtually no limitations on sitting. Lincoln also stuck by its conclusion that employment opportunities remained open to Quezada based on the vocational rehabilitation counselor's finding that Quezada could serve as a material coordinator or laboratory supervisor (ROCHE00409). The denial cited the findings of an appeal review physician, Dr. Priya Swamy, but did not discuss any of Quezada's supplemental evidence.

The appeal review conducted by Dr. Swamy acknowledged Quezada's "diagnoses of spinal stenosis, low back pain, chronic myofascial pain, mild lumbosacral spondylosis, segmental and somatic dysfunction of the lumbar spine, and hip pain," but concluded that "aside from the work status report dated August 04, 2020, there were no clinical records . . . documenting functional impairments . . . that would require restrictions and/or limitations" (ROCHE00417).

The appeal denial letter cited the definitions of "disability," "disability earnings," "regular job," and "gainful occupation" (ROCHE00418). It described the final appeal decision as follows (ROCHE00417):

> We conducted a thorough and independent review of Mr. Quezada's entire claim. In summary, we acknowledge that he may have continued to experience some symptoms associated with his condition beyond January 31, 2020. However, the information does not contain exam findings, diagnostic test results or other forms of medical documentation supporting his symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of Any Occupation beyond January 31, 2020.
>
> Having carefully considered all of the information submitted in support of Mr. Quezada's claim, our position remains that proof of his continued disability in accordance with the Plan provisions after January 31, 2020 has not been provided. Therefore, no further benefits are payable.

After the appeal determination affirming the denial, Lincoln referred Quezada to a case manager for vocational rehabilitation services (ROCHE00475). Quezada turned down these services, reiterating that he had no capacity to work (ROCHE00477). In October 2020, he filed this ERISA lawsuit challenging the denial of his long-term disability benefits.

This order follows full briefing and a telephonic hearing on the motion.

## ANALYSIS

In the ERISA context, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009).

1. **STANDARD OF REVIEW.**

Quezada argues that California law applies to this action, as California Insurance Code 10110.6 prohibits the use of discretionary clauses in insurance policies. Plaintiff offers misplaced reliance on several district court cases that did not apply the Supreme Court's holding that ERISA "exempt[s] self-funded ERISA plans from state laws that regulate insurance. . . ." *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990), *see also Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907 (9th Cir. 2009); *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1136 (9th Cir. 2017).

9

Following the Supreme Court's direction in *Firestone*, our court of appeals held that abuse of discretion review is required "whenever an ERISA plan grants discretion to the plan administrator." *Abatie v Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006). Here the plan granted discretion by providing that the "Plan Administrator will have all powers necessary or convenient to supervise, in its discretion, the administration of the Plan" (ROCHE02728). Contrary to plaintiff's assertion, the plan administrator also had the authority to "delegate its responsibilities under the Plan and to designate other persons to carry out any of its responsibilities under the Plan" and did so by delegating claim administration to Lincoln (ROCHE02729).

When reviewing a plan administrator's determination for an abuse of discretion the district court may "tailor its review to all the circumstances before it," and "decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Id.* at 968. The abuse of discretion review must be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Id*. at 967. Thus, the abuse of discretion standard may be tempered by a "level of skepticism" if, for instance, "a structural conflict of interest is accompanied [] by evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id*. at 968. No cause for skepticism arises here, however, because Genentech funded its own plan then delegated authority to Roche to administer it (and Roche, in turn, delegated claim administration to Lincoln). These layers of delegation removed any structural conflict of interest. Quezada has offered no evidence of malice, self-dealing, or parsimonious history of claim determination that would warrant skepticism.

So, this order reviews Lincoln's decision for abuse of discretion, without heightened skepticism. When reviewing the actions of a plan for an abuse of discretion, the decision of the plan administrator must stand whenever reasonable. "The reasonableness standard requires deference to an administrator's benefits decision unless it is '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (citing *Salomaa v. Honda Long*

*Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011)). Our court of appeals has laid out additional relevant factors for reviewing an insurance benefits determination:

> . . . whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts with all of the relevant evidence, and whether the administrator considered a contrary SSA disability determination, if any.

*Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009).

### 2. LINCOLN ABUSED ITS DISCRETION.

An insurance provider has a fiduciary role requiring it to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104(a)(1). "ERISA imposes higher-than-marketplace quality standards on insurers," requiring a plan administrator to "provide a full and fair review of claim denials." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); 29 U.S.C. § 1133(2). Lincoln failed to provide a full and fair review for the following reasons and therefore abused its discretion.

#### A. LINCOLN DID NOT HAVE A MEANINGFUL DIALOGUE WITH QUEZADA.

Though the January 2020 denial letter and September 2020 appeal letter satisfied some of ERISA's requirements, Lincoln failed in a glaring respect. Namely, it did not have a meaningful dialogue with Quezada about the reasons for the denial and what he needed to do to support his claim.

Under federal law, an ERISA plan administrator "shall set forth, in a manner calculated to be understood by the claimant":

> (1) [t]he specific reason or reasons for the adverse determination; (2) [r]eference to the specific plan provisions on which the benefit determination is based; (3) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary; and (4) [a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

11

29 CFR 2560.503-1(g)(1)(i)–(iv). *Booton v. Lockheed Med. Ben. Plan* interpreted these regulations as follows:

> In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it. There is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters.

110 F.3d 1461, 1463 (9th Cir. 1997) (citing 29 C.F.R. § 2560.503–1(f)).

In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, our court of appeals held that Metlife did not meet its duty to have a meaningful dialogue when it denied plaintiff's request for long-term disability benefits related to spine degeneration. 522 F.3d 863, 870 (9th Cir. 2008). Problematically, Metlife did not tell Saffon what she "must do to perfect her claim." *Ibid*. Our court of appeals found Metlife's letter to be unacceptably uninformative:

> [The denial letter] notes merely that "[t]he medical information provided no longer provides evidence of disability that would prevent you from performing your job or occupation," but does not explain why that is the case, and certainly does not engage [the treating physician's] contrary assertion. The termination letter does suggest Saffon can appeal by providing "objective medical information to support [her] inability to perform the duties of [her] occupation," but does not explain why the information Saffon has already provided is insufficient for that purpose.

*Ibid*. When Saffon and her doctor submitted additional supporting evidence about Saffon's ineffective treatments, Metlife's appeal review physician remained unconvinced, but "[did] not explain why he is unconvinced, nor what Saffon or [her treating physician] would need to do to convince him." *Id*. at 871. The final post-appeal letter continued to justify the termination, at least in part, on the basis that Saffon had not submitted any objective test of her inability to perform her job. Our court of appeals pointed out that "this information came too late to do Saffon any good." *Ibid*.

12

So too here. Lincoln should have notified Quezada about the inability to reach Dr. Guzman *before* issuing the first denial. Lincoln argues that it notified Quezada of its inability to contact Dr. Guzman. True, the January 2020 letter mentions that Lincoln's consulting physician could not reach Dr. Guzman (ROCHE00469):

> The Consulting Physician attempted to contact Dr. Guzman by phone on July 1, 2019, July 2, 2019, and July 8, 2019. Messages were left for Dr. Guzman, and a response was not received.

This, however, was too little, too late. To reiterate, Lincoln should have asked Quezada for help reaching Dr. Guzman *before* terminating his benefits.

Just as in *Saffon*, Lincoln cannot merely assert that Quezada provided insufficient evidence, without more explanation, as Lincoln "does not explain why the information [Quezada] ha[d] already provided [was] insufficient for that purpose." 522 F.3d at 870. Rather, Lincoln has the duty to tell Quezada what he "must do to perfect [his] claim." *Ibid*. To have fostered a meaningful dialogue about the denial, Lincoln should have asked Quezada for help contacting Dr. Guzman. Instead, Lincoln waited until the denial letter to mention that Dr. Guzman could not be reached. Then it saddled Quezada with vague, suggestions about what further evidence might be needed (never mentioning what further evidence Dr. Guzman needed to provide) (ROCHE00471):

> The written request for review must be sent within 180 days from the receipt of this letter and state the reasons you feel your claim should not have been denied. In your request for review please include the following documentation:
>
> All medical documentation, office treatment notes, diagnostic test results (including x-ray reports and MRI reports, as well as any additional testing completed), chiropractic office treatment notes, acupuncture office treatment notes, physical and/or occupational therapy notes, prescription histories, Emergency Department and hospitalization summaries, specific restrictions and limitations, and detailed treatment plan dated August 15, 2017 to the present that have not previously been received from all treating providers.
>
> You should also provide any additional information that you feel will support your claim.

Once Quezada submitted additional documentation from Dr. Guzman (the August 2020 medical record regarding Quezada's physical restrictions), Lincoln again had trouble reaching him. The September 2020 final determination letter explained that the appeal review physician "attempted to contact Mr. Quezada's treating provider, Dr. Hector Guzman to discuss his case, however, telephone contract was not successful" (ROCHE00417).

Lincoln had a duty to communicate with Dr. Guzman if they had questions about the August 2020 record submitted in support of Quezada's appeal, because whenever "plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." *Booton*, 110 F.3d at 1463. Once Dr. Swamy concluded that Dr. Guzman's August 2020 record had too little detail to be relied upon Quezada should have been given an opportunity to remedy the communication breakdown.

When Lincoln issued an appeal determination upholding its denial, the appeal letter did not say that that August 2020 record from Dr. Guzman was too barebones to be relied upon. The letter merely stated:

> There were no current office visit notes provided after November 19, 2019. Dr. Swamy indicated that aside from the work status report dated August 04, 2020, there were no clinical records provided for the review documenting functional impairments.

At best, Lincoln offered boilerplate instructions on how to submit still more information or comments on the appeal (ROCHE0411–12):

> At this time, Lincoln has concluded their review and Mr. Quezada's claim remains closed. You may request to review relevant file documents upon which the denial of benefits was based.
>
> If you disagree with this denial, you may make a written request to Lincoln. You may submit any additional information or comments you deem pertinent for review. All requests must be made in writing within 180 days of the date of this letter Lincoln will provide you with the decision, in writing, within 45 days of receipt of your written appeal; if there are special circumstances, you will receive notice within 90 days.

14

But Quezada was still denied any explanation of what further evidence was "needed to perfect his claim," as the appeal letter continued to leave out what further evidence would convince Lincoln of his disability.

We are left wondering whether a simple call with Dr. Guzman would have changed the decision. This demonstrates exactly why the meaningful dialogue requirement exists in the first place. At a bare minimum, Lincoln had a duty to ask for what it needed and to engage Quezada in a meaningful dialogue about the reasons for the denial. Failing to convey the importance of speaking with Dr. Guzman, especially to clarify the August 2020 medical record, shows a failure of the back-and-forth that Lincoln had a duty to facilitate. Lincoln "lack[ed] necessary — and easily obtainable — information" and therefore "made its decision blindfolded" when it didn't have to. 110 F.3d at 1461. Leaving Quezada in the dark about the perceived deficits in his record constituted a violation of the meaningful dialogue requirement and represents an abuse of discretion.

### B. LINCOLN DID NOT ADEQUATELY CONSIDER SUBJECTIVE REPORTS OF PAIN.

Quezada argues that Lincoln improperly ignored his reports of subjective pain, failing to weigh them in its denial decision. This argument has merit and warrants reconsideration of Quezada's claim.

Lincoln's denial letter and appeal letter mentioned pain multiple times (ROCHE00469–70):

- "[T]his individual's complaint of chronic back pain that [sic] persists in spite of ongoing use of marijuana and opioids . . . Based solely upon the complaints of chronic back pain particularly in light of the lack of documentation of even routine use of pain scores or descriptions of severity of symptoms and the ongoing use of opioids and marijuana in spite of no documented benefit some limited restrictions as below would be supported."

- The in-person medical examiner's findings that "[t]he claimant's lumbar spine condition and source of symptoms appears consistent with a chronic condition involving the lumbar intervertebral discs. He has suffered several exacerbations . . . and he also reported a recent exacerbation approximately 3 days prior to this evaluation."

- "While we do acknowledge that you may remain symptomatic and continue to treat, based on multiple medical reviews and available medical documentation, we have determined that you would have capacity to work full time in a medium occupation."

The appeal letter also noted (ROCHE00407–10):

> [H]is claim was reviewed by Dr. Priya Swamy, an independent physician who is board certified in Physical Medicine & Rehabilitation and Pain Medicine. . . . Dr. Swamy concluded the available evidence supports diagnoses of spinal stenosis, low back pain, chronic myofascial pain, mild lumbosacral spondylosis, segmental and somatic dysfunction of the lumbar spine, and hip pain.

The appeal letter, nevertheless, concluded that Quezada's file did "not contain exam findings, diagnostic test results or other forms of medical documentation supporting his symptoms and impairments remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of Any Occupation beyond January 31, 2020."

Lincoln arrived at this conclusion despite reiterating the in-person medical examiner's findings that Quezada had a chronic condition, including several recent exacerbations. The conclusion also seemingly contradicts Dr. Swamy's findings that Quezada's records evidenced pain-causing diagnoses.

Though the appeal letter said that Lincoln received supplemental information, no where did the letter provide a critique of any this extra information. In fact, the letter merely mentions the additional medical records (so voluminous that they had to be sent via thumb drive) received by Lincoln in July 2020. Based on our record, it is impossible to tell if Lincoln ever reviewed the records submitted via thumb drive, if these records contained new information, and if they did, what reasons Lincoln had for rejecting this new evidence.

Further, the letter never mentioned Quezada's supplemental statement, which provided evidence that his pain prevented him from working:

> I continue to experience pain and flare-ups on a daily basis. At night, I can only sleep on my back and wake up approximately five or six times a night due to pain. I take prescription medication including Flexeril and lidocaine patches which I use on a daily

16

> basis. The medications make me drowsy, difficult to concentrate and usually have to lie down. . . . During the day, I am able to make coffee and stretch, but need to lie down at least twice a day for approximately two hours.

Lincoln fails to point to any plan provision indicating that Quezada's self-reports, particularly in light of the numerous observations of his physicians, could not establish his disability. In fact, our court of appeals has recognized that reports of pain should not be discounted for lack objective evidence, as "individual reactions to pain are subjective and not easily determined by reference to objective measurements." *Saffon*, 522 F.3d at 872. Lincoln did not reasonably consider Quezada's self-reported pain and limitations before denying his claim at the appeal level.

Nor did the letter reject Quezada's self-reported mental effects of his pain medication. In *Demer v. IBM Corporation LTD Plan*, however, our court of appeals reversed the district court's grant of summary judgment in favor of defendants because the denial "never explained specifically why they rejected [the plaintiff's] claim of mental function limitations" while he was taking powerful narcotic medications and his subjective complaints had been corroborated by treating physicians and a friend. 835 F.3d 893, 905 (9th Cir. 2016).

### 3. LINCOLN CANNOT ARGUE THAT QUEZADA'S CONDITION IMPROVED.

Lincoln argues that denial was reasonable because Quezada's condition had improved. But Lincoln's prior denial and appeal determination did not rely on this reasoning. In fact, they cited evidence to the contrary.

In the January 2020 denial letter, Lincoln relied upon the conclusions of a record-review physician. In regard to Quezada's use of cannabis and opioids, the record-review physician noted their continued use despite a "lack of documentation of any symptomatic improvement and certainly without evidence of functional improvement" (ROCHE00469). The denial letter also cited the results of the in-person medical examination, which stated:

> A repeat MRI of the lumbar spine dated 9/18/18 showed multilevel degenerative disc disease with annular tears in the L1/2, L3/4, L5/S1 discs which are stable compared to previous study in 2014 . . . The MRI's revealed multilevel annular tears. . . . He has suffered several exacerbations of his lower back condition, with a report of an exacerbation on 9/18/18 after putting on his socks, and

17

> he also reported a recent exacerbation approximately 3 days prior to this evaluation. Repeated motions of the lumbar spine or motion with increased axial weight increase the likelihood of re-injuring the lumbar intervertebral discs.

Lincoln's September 2020 appeal letter nowhere stated that Quezada's condition had improved.

Lincoln attempts to offer evidence of improvement never relied upon in the process of denying Quezada's claim. "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding." *Harlick v. Blue Shield of California*, 686 F.3d 699, 719 (9th Cir. 2012). Quezada has not waived an objection to presenting this new reason now. Lincoln's contention that Quezada's condition improved amounts to impermissible post hoc justification and carries no weight.

### 4. THE SSA DETERMINATION HAS NO EVIDENTIARY WEIGHT.

Lincoln suggests Quezada's social security disability insurance denial supports their determination. "Social Security disability awards do not bind plan administrators, but . . . are evidence of disability." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011). No law, however, suggests that a SSDI *denial* automatically makes an insurance company's parallel denial reasonable, as insurance companies may employ different eligibility criteria than those for SSDI eligibility.

Though evidence of the SSDI denial appears in Quezada's claim record, Quezada's appeal letter explicitly states that determinations "are not contingent on decisions made by either the Social Security Administration or other disability-determining entities" (ROCHE00410). Because the SSDI and insurance decisions here came out the same way, the SSDI denial does not provide evidence of a reasonable or unreasonable decision on Lincoln's part.

### 5. LINCOLN MUST RECONSIDER LINCOLN'S CLAIM.

Because this order holds that defendant claim administrator, Lincoln, abused its discretion, requiring plaintiff to move for summary judgment before remanding this case would

be a mere formality. This matter therefore is remanded to Lincoln for further investigation and a full review, complete with another appeal opportunity if Lincoln denies plaintiff's claim again.

In reprocessing Quezada's claim, Lincoln must ensure that all of its questions about Lincoln's records have been asked and that Quezada has had an opportunity to answer, so that Lincoln can perform the full and fair review of a more complete record. See, *e.g., Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995). Lincoln must talk with Dr. Guzman to clarify Quezada's treatment and the August 2020 record submitted with Quezada's appeal. Lincoln must also ensure that it has thoroughly reviewed all medical files submitted (including those submitted with Quezada's appeal) and Quezada's statement. Lincoln also needs to engage with these materials if it chooses to reissue a denial so that Quezada will have an opportunity to respond to identified deficiencies, if any.

## CONCLUSION

Lincoln's motion for summary judgment is **DENIED**. The denial of Quezada's claim for long-term disability benefits is hereby **REMANDED FOR RECONSIDERATION** in line with this order.

The case management conference currently set for Thursday, September 16, is hereby **VACATED**.

**THE CLERK SHALL CLOSE THE FILE.**

**IT IS SO ORDERED.**

Dated: September 8, 2021

　　　　　　　　　　　　　　　　　　　WILLIAM ALSUP
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

19